## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TEYANA GIBSON BROWN, *et al.*,
*Plaintiffs*,

v.

MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*, *et al.*,
*Defendants*.

Case No. 1:26-cv-1131-TSC

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION OF RESPONSIVE PLEADING DEADLINE

Plaintiffs oppose Defendants' Motion for a three-month extension, Dkt. No. 11, and respectfully ask this Court to deny it. Plaintiffs' reasons for opposing the Motion as filed are set forth below.

### BACKGROUND

This case arises out of a secret memorandum (the "Home Entry Memo" or "Memo") that authorizes DHS agents to forcibly enter the homes of persons subject to final orders of removal without judicial warrants. Plaintiffs, all of whom have had DHS agents storm into their homes without judicial warrants pursuant to the Home Entry Memo, seek to have the Memo vacated, set aside, and declared unlawful and unconstitutional on the grounds that the policy set forth in the Memo violates the Fourth Amendment, the Immigration and Nationality Act, and the Administrative Procedure Act.

Plaintiffs filed their Complaint on April 2, 2026. Defendants' deadline to file a responsive pleading is June 5, 2006. Fed. R. Civ. P. 12(a)(2). On May 21, 2026, Defendants filed

a motion for a three-month extension of the deadline. Defendants state that the Secretary of the Department of Homeland Security has "paused" implementation of the Home Entry Memo to "assess" its policy of authorizing "entering an illegal alien's residence who is subject to a final order of removal with an I-205, Warrant of Deportation." Mot. at 2. The Secretary announced this pause in a four-sentence letter to Senator Richard Blumenthal that contained no explanation of what the pause entails. Public reporting suggests not much: Three days before Defendants filed their Motion before the Court—and ten days after Defendant Mullin's representation to Senator Blumenthal—DHS agents forcibly entered a home in Tucson, Arizona without a judicial warrant and arrested a beneficiary of the Deferred Action for Childhood Arrivals program.[1]

Prior to filing the Motion, Defendants' counsel sought Plaintiffs' position on its request via e-mail. In a good faith effort to consider the Defendants request, Plaintiffs several times sought clarification from Defendants regarding the "pause" but did not receive any response. Plaintiffs asked Defendants, *inter alia*, to specify what they mean by a "pause"; for information about when and how the pause has been implemented and communicated, including the training, if any, being provided by DHS and ICE personnel on the "pause"; what assurances Plaintiffs have that enforcement of the policy would not be resumed; and what assurances Plaintiffs have that they will not experience any additional home entries during the pendency of the pause. Plaintiffs also asked Defendants to explain why they need three months to assess the policy. *See* Pls.' Ex. A (email correspondence between counsel). Defendants failed to provide any response, and instead filed the Motion now before the Court.

---

[1] Emily Bregel, *Attorney of Detained Tucson DACA Recipient Disputes DHS Claim She Assaulted Arresting Agent*, Ariz. Daily Star (May 22, 2026), https://tucson.com/news/local/border/article_a143f7ba-b9b3-4888-91ca-fd8ed219d222.html.

Because Defendants failed to provide any clarification of their position or explanation for an extension, Plaintiffs oppose Defendants' Motion. Because Defendants have failed to show good cause for an extension, the Court should deny it.

## ARGUMENT

"A court may extend a filing deadline when the moving party requests an extension before the original filing deadline and shows good cause." *Jordan v. U.S. Dep't of Just.*, 315 F. Supp. 3d 584, 594 (D.D.C. 2018) (citing Fed. R. Civ. P. 6(b)(1)). While it is within the Court's discretion to decide such a motion, the movant still bears the burden of establishing good cause. *Id.*; *see also Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 558 (7th Cir. 1996) (district court's *sua sponte* extension of time reversible error).

Defendants' Motion fails to establish good cause for a three-month extension. First, the Motion is vague and noncommittal as to what the Secretary's "pause" means. Mot. at 2. To the extent Defendants are representing that the Home Entry Memo is not currently in effect, that representation is contradicted by public reporting of a forcible, warrantless home entry in Arizona just last week. Further, Defendants have failed to explain why any extension is needed to file a responsive pleading, much less one of three months' duration. They offer only a speculative assertion that an extension "might" dispose of Plaintiffs' claims. And finally, Plaintiffs will be prejudiced by the ongoing threat to their constitutional rights exacerbated by further delay.

I.    **Defendants' assertion that the Home Entry Memo has been "paused" is vague and contradicted by reports of a recent warrantless home entry.**

Defendants' sole basis for an extension is a vague assertion that the Secretary of Homeland Security "has paused the challenged practice in this case and is currently assessing that practice," and that this assessment "might be dispositive of this action." Mot. at 2. As

evidence, Defendants submit only a brief, unsworn letter from the Secretary to Senator Richard Blumenthal, dated May 8, 2026, stating that ICE "has not rescinded the [Home Entry Memo]," but that the Secretary has nonetheless "paused the practice" while he assesses the policy. *Id.*, Ex. A.

This bare assertion that the Home Entry Memo is "paused" raises more questions than it answers. For any extension to be proper, Defendants would need to answer these questions. What does it mean that the policy has been "paused" but "not rescinded"? *Id.* Is the prior DHS policy prohibiting forcible home entry without a judicial warrant, *see* Compl. at ¶¶ 35–41, back in effect? Or is there currently no operative DHS policy governing forcible home entries during the Secretary's review of the Home Entry Memo? Has the Secretary's "pause" been communicated to ICE field offices, supervisors, and agents? Is the Home Entry Memo still being taught to new ICE recruits at the Federal Law Enforcement Training Center during the pause? Have the thousands of ICE agents already trained under the Home Entry Memo been provided with new guidance? Defendants' motion fails to suggest an answer to any of these questions, but answering each of them is necessary to evaluate how a three-month extension may impact the parties and therefore whether good cause exists.

Defendants suggest that the presumption of regularity should apply to the Secretary's letter to Senator Blumenthal. *See* Mot. at 2 (citing *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)). Even if it did, that would not cure the letter's vagueness. Without any details about what the supposed "pause" entails, Plaintiffs and the Court have no way to evaluate its actual effect. "The presumption of regularity—to the extent it is not rebutted—requires a court to treat the Government's record as accurate; it does not compel a determination that the record establishes what it is offered to prove." *Latif v. Obama*, 666 F.3d 746, 750 (D.C. Cir. 2011).

4

Nor are Defendants entitled to any presumption of regularity here. This policy was rolled out in secret and kept intentionally hidden from the public. *See* Compl. at ¶¶ 47–49, 58–62. And the claimed pause appears contradicted by public reporting from just last week. On May 18, 2026, DHS agents in Tucson, Arizona forcibly entered the home of Karla Toledo without a judicial warrant. When Ms. Toledo asked the agents for a warrant, they replied, "we have an administrative warrant."[2] Agents entered Ms. Toledo's house and arrested her. At a press conference several days later, Ms. Toledo's attorney stated that "DHS agents did not possess a judicial warrant that would authorize entry into [the Toledos'] home."[3] Thus, despite the Secretary's statement to Senator Blumenthal that he had "paused the practice" of entering homes without a judicial warrant, just ten days later DHS agents forced their way into Ms. Toledo's home without a judicial warrant and arrested her. Whatever the Secretary's "pause" may mean, it does not mean that DHS has ceased "the challenged practice in this case." Mot. at 2. Defendants' mere assertion that the Secretary has "paused" the Home Entry Memo, while DHS agents continue to forcibly enter homes without a judicial warrant, is no basis for a three-month extension without real assurances that the policy will not be enforced during that time.

## II.    Defendants have provided no explanation for why an extension is necessary.

While requests for extensions of "short duration" are "routine" and liberally granted, *see Jordan*, 315 F. Supp. 3d at 594, Defendants' request here is not for a week or two, but for three months without *any* explanation for why an extension of such length is needed. The Home Entry Memo was issued in May 2025 and the Complaint has been on file for nearly two months.

---

[2] *Video Shows Karla Toledo Being Detained by DHS at Tucson, Ariz. Home*, Ariz. Republic (May 21, 2026), https://www.azcentral.com/videos/news/politics/immigration/2026/05/21/video-shows-karla-toledo-being-detained-dhs-tucson-az-home/90189027007/.

[3] Bregel, *supra*.

5

Defendant Mullin's confirmation hearing took place on March 18, 2026, at which time he expressed an intention to review the Home Entry Memo. Mot. at 1–2. Defendants waited until two weeks before the answer deadline to seek this extension. There is no apparent reason why it has taken Defendants until now to review the Home Entry Memo (or alternatively what review has taken place before now), much less why three additional months is needed for government policymakers and attorneys to determine whether a policy allowing for the entry of homes without judicial warrants is permitted by law or serves the Defendants' law enforcement policy objectives. At the very least, Defendants should be required to offer a reasoned justification for their request.

The Defendants' Motion is devoid of any such explanation. It offers only that the Secretary's assessment "might be dispositive of this action" without further elaboration. Mot. at 2. But without a more detailed account of the Secretary's "ongoing consideration of the practice," *id*. at 3—and especially while the Home Entry Memo appears to remain in effect, *supra* at 3–5—the Defendants' assertion is pure speculation. Defendants have not described the scope of the Secretary's review, or whether it will even address the procedural and substantive legal claims Plaintiffs have asserted—let alone how it might dispose of them. Nor have Defendants explained how a three-month delay will "preserve judicial resources." Mot. at 3. This is not the sort of matter where it is prudent to stay a deadline to avoid an onerous expenditure of judicial resources, such as when the case would otherwise go to trial. Moreover, to the extent the Secretary's assessment of the Home Entry Memo "might" result in its rescission, Mot. at 2, that voluntary cessation, by itself, may not moot Plaintiffs' claims. *Valancourt Books, LLC v. Garland*, 82 F.4th 1222, 1230 (D.C. Cir. 2023) ("A party's voluntary cessation of challenged conduct does not moot the challenge unless it is 'absolutely clear' that the challenged conduct

will not recur after the litigation.") (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017)). Answering this question would require analyzing a host of factors, none of which are discussed in or discernible from the submissions in Defendants' Motion.

### III.    Plaintiffs would be prejudiced by a three-month delay.

The prejudice to Plaintiffs of a three-month delay—especially without any of the assurances set forth above about the scope and implementation of the asserted "pause" in the policy—is apparent. Each day that the Home Entry Memo remains operative is one in which the Plaintiffs are forced to live under the threat that their homes will once again be invaded by federal agents with all the resulting damage to themselves, their families, and their property detailed in the Complaint. This type of harm is the very focus of the Fourth Amendment's protections. *See Lange v. California*, 594 U.S. 295, 303 (2021) ("At the Amendment's 'very core,' we have said, 'stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion.'") (quoting *Collins v. Virginia*, 584 U.S. 586, 592 (2018)).

Defendants' bare assertion that a review of the Home Entry Memo "might be dispositive of this action" does not overcome the prejudice to the Plaintiffs, especially given the fact that federal agents continue to enter homes without judicial warrants in spite of Defendant Mullin's unsworn, vague, and noncommittal representation that he has "paused" the practice.

### CONCLUSION

For the foregoing reasons, Defendants' Motion seeking an extension should be denied.

Dated:  May 29, 2026

Respectfully submitted,

*s/* Kristy Parker
Kristy Parker, D.C. Bar No. 1542111
Shalini Goel Agarwal, D.C. Bar No. 990963
**Protect Democracy Project**
2020 Pennsylvania Ave NW
Washington DC 20006
Tel: (202) 579-4582
kristy.parker@protectdemocracy.org
shalini.agarwal@protectdemocracy.org

Conor Gaffney*
**Protect Democracy Project**
201 St. Charles Ave, Suite 114
New Orleans, LA 70170
Tel: (202) 579-4582
conor.gaffney@protectdemocracy.org

Julia L. Torti*
**Protect Democracy Project**
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
jules.tori@protectdemocracy.org

Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
**ACLU Foundation of the District of Columbia**
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: (202) 457-0800
mperloff@acludc.org
ashah@acludc.org

Jenn Rolnick Borchetta*
Sapana Anand*
**American Civil Liberties Union Foundation**
125 Broad Street
New York, NY 10004
Tel: (914) 462-2363
jborchetta@aclu.org
sanand@aclu.org

Spencer Amdur*
Oscar Sarabia Roman*
**American Civil Liberties Union**
**Foundation**
425 California Street, 7th Floor
San Francisco, CA 94104
Tel: (415) 343-0770
samdur@aclu.org
osarabia@aclu.org

Kathryn Huddleston**
Lucia Goin, D.C. Bar No. 1739389
**American Civil Liberties Union**
**Foundation**
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Tel: (212) 549-2500
khuddleston@aclu.org
lgoin@aclu.org

Benjamin Casper*
Teresa Nelson*
Catherine Ahlin-Halverson*
Alicia Granse*
**American Civil Liberties Union of**
**Minnesota**
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 529-1692
bcasper@aclu-mn.org
tnelson@aclu-mn.org
cahlin@aclu-mn.org
agranse@aclu-mn.org

Ian Bratlie*
**American Civil Liberties Union of**
**Minnesota**
424 N. Riverfront Dr. No. 34
Mankato, MN 56001
Tel: (507) 995-6575
ibratlie@aclu-mn.org

James K. Langdon***
Thomas P. Swigert*
Michael Rowe*

9

**Dorsey & Whitney LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel: (612) 340-2600
langdon.jim@dorsey.com
swigert.tom@dorsey.com
rowe.michael@dorsey.com

Steven J. Wells*
1201 Yale Place, #1806
Minneapolis, MN 55403
(612) 360-7870
stevewells612@gmail.com

*Application for pro hac vice
forthcoming.
**Admitted to practice in Texas and
Arizona. Practice limited to federal courts
and under the supervision of a member of
the D.C. Bar.
*** Admitted pro hac vice.