**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

TEYANA GIBSON BROWN, *et al.*,

 *Plaintiffs*,

  *v.*

MARKWAYNE MULLIN, in his official capacity as
Secretary of the U.S. Department of Homeland
Security, *et al.*,

 *Defendants*.

No. 1:26-cv-01131-TSC

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    I.      The Lyons Guidance .......................................................................... 2

    II.     This Litigation .................................................................................... 4

    III.    The Secretary Pauses the Implementation of the Lyons Guidance ......................... 6

LEGAL STANDARD .................................................................................................... 7

ARGUMENT ................................................................................................................. 8

    I.      This Court Does Not Have Jurisdiction ................................................. 8

        A.     Plaintiffs Do Not Have Article III Standing Based on Past Allegedly Unlawful Government Conduct. .................................. 8

        B.     Plaintiffs Do Not Challenge Any Final Agency Action ........................... 11

        C.     The Case Is Moot Because Defendants Are No Longer Implementing the Lyons Guidance. ............................................. 13

    II.     Plaintiffs Fail to State a Claim .............................................................. 14

        A.     The Lyons Guidance Does Not Violate the Fourth Amendment. ............. 15

        B.     The Lyons Guidance Is Otherwise Lawful Under the APA. ..................... 22

        C.     Plaintiffs Fail to State a Claim Under the FVRA, the APA, or Appointments Clause Relating to Lyons's Appointment as Acting ICE Director. ....................................................................... 25

    III.    In the Alternative to Dismissal, the Court Should Transfer this Case to the District of Minnesota Because All Relevant Events Occurred There and All Plaintiffs Reside There. ...................................................................................... 29

    IV.    The Court Can Grant Relief to the Plaintiffs Only ................................. 31

CONCLUSION ............................................................................................................ 32

# TABLE OF AUTHORITIES

**Cases**

*Abel v. United States*,
  362 U.S. 217 (1960).................................................................................................*passim*

*Alaska v. Dep't of Agric.*,
  17 F.4th 1224 (D.C. Cir. 2021) ......................................................................................... 14

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Nat'l Lab. Rels. Bd.*,
  57 F.4th 1023 (D.C. Cir. 2023) ......................................................................................... 24

*Am. Hosp. Ass'n v. Bowen*,
  834 F.2d 1037 (D.C. Cir. 1987) ........................................................................................ 24

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011)........................................................................................... 7

*Arabzada v. Donis*,
  725 F. Supp. 3d 1 (D.D.C. 2024) ........................................................................................ 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................. 7

*Batterton v. Marshall*,
  648 F.2d 694 (D.C. Cir. 1980) .......................................................................................... 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................. 7

*Bennett v. Spear*,
  520 U.S. 154 (1997)........................................................................................................... 11

*Byerson v. Equifax Info. Servs., LLC*,
  467 F. Supp. 2d 627 (E.D. Va. 2006) ............................................................................... 31

*Cal. Cmtys. Against Toxics v. EPA*,
  934 F.3d 627 (D.C. Cir. 2019) .......................................................................................... 11

*Camara v. Municipal Court*,
  387 U.S. 523 (1967)..................................................................................................... 15, 16

*Carlson v. Landon,*
   342 U.S. 524 (1952) ................................................................................................ 18

*Centro de Trabajadores Unidos v. Bessent,*
   167 F.4th 1218 (D.C. Cir. 2026) ........................................................................... 13

*Chaplaincy of Full Gospel Churches v. Navy,*
   697 F.3d 1171 (D.C. Cir. 2012) ............................................................................ 10

*City of El Cenizo, Texas v. Texas,*
   890 F.3d 164 (5th Cir. 2018) ........................................................................... 15, 18

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ........................................................................................ 1, 9, 10

*City of Los Angeles v. Patel,*
   576 U.S. 409 (2015) ............................................................................................... 15

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ....................................................................................... 9, 10, 11

*Daimler Chrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ................................................................................................. 7

District of Columbia.,
   576 F. Supp. 2d 107 (D.D.C. 2008) ................................................................. 30, 31

*FCC v. Prometheus Radio Project,*
   592 U.S. 414 (2021) ......................................................................................... 24, 25

*Fed. Hous. Fin. Agency v. First Tenn. Bank Nat. Ass'n,*
   856 F. Supp. 2d 186 (D.D.C. 2012) ...................................................................... 31

*Fed. Ins. Co. v. Shaw Indus., Inc.,*
   No. 1:23-CV-1367-RDP, 2024 WL 2884558 (N.D. Ala. June 7, 2024) ................... 30

*Flores ex rel. Galvez-Maldonado v. Meese,*
   913 F.2d 1315 (9th Cir. 1990) ............................................................................... 17

*Food & Water Watch, Inc. v. Vilsack,*
   808 F.3d 905 (D.C. Cir. 2015) ................................................................................ 7

*ForUsAll, Inc. v. Dep't of Lab.,*
   691 F. Supp. 3d 14 (D.D.C. 2023) ......................................................................... 12

iii

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ................................................................................. 13

*Greene v. Nat'l Head Start Ass'n, Inc.,*
    610 F. Supp. 2d 72 (D.D.C. 2009) ...................................................... 30, 31

*\*Griffin v. Wisconsin,*
    483 U.S. 868 (1987) ............................................................. 15, 16, 20, 21

*Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,*
    356 F. Supp. 3d 109 (D.D.C.) ................................................................. 28

*Gustave-Schmidt v. Chao,*
    226 F. Supp. 2d 191 (D.D.C. 2002) .......................................................... 8

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.,*
    46 S. Ct. 1391, 1399 (2026) ...................................................................... 7

*Hussen v. Noem,*
    822 F. Supp. 3d 944 (D. Minn. 2026) ..................................................... 10

*Jenkins v. Howard Univ.,*
    123 F.4th 1343 (D.C. Cir. 2024) ................................................................ 7

*Kidd v. Mayorkas,*
    734 F. Supp. 3d 967 (C.D. Cal. 2024) .................................................... 21

*Kinney-Coastal Oil Co. v. Kieffer,*
    277 U.S. 488 (1928) ................................................................................. 32

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ................................................................................... 8

*Lopez v. INS,*
    758 F.2d 1390 (10th Cir. 1985) .......................................................... 19, 22

*Lopez-Lopez v. Cnty. of Allegan,*
    321 F. Supp. 3d 794 (W.D. Mich. 2018) ................................................. 19

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................... 8

*McLaughlin v. Holder,*
    864 F. Supp. 2d 134 (D.D.C. 2012) ........................................................ 30

iv

*Mendoza v. Perez,*
    754 F.3d 1002 (D.C. Cir. 2014) ................................................................... 24

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ..................................................................................... 25

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ....................................................................................... 8

*NLRB v. Noel Canning,*
    573 U.S. 513 (2014) ................................................................................... 29

*National Mining Association v. McCarthy,*
    758 F.3d 243 (D.C. Cir. 2014) ................................................................... 13

*Nat'l Ass'n of Home Builders v. Norton,*
    415 F.3d 8 (D.C. Cir. 2005) ....................................................................... 11

*Nielsen v. Preap,*
    586 U.S. 392 (2019) ................................................................................... 20

*NLRB v. SW Gen., Inc.,*
    580 U.S. 288 (2017) ............................................................................. 27, 28

*Noem v. Vasquez Perdomo,*
    146 S. Ct. 1 (2025) ..................................................................................... 10

*Reform v. DHS,*
    621 F. Supp. 3d 84 (D.D.C. 2022) ............................................................. 12

*Samma v. Dep't of Def.,*
    136 F.4th 1108 (D.C. Cir. 2025) ........................................................... 13, 14

*Sheffer v. Novartis Pharms. Corp.,*
    873 F. Supp. 2d 371 (D.D.C. 2012) ........................................................... 29

*Sherman v. U.S. Parole Comm'n,*
    502 F.3d 869 (9th Cir. 2007) ................................................................. 19, 20

*Sierra Club v. EPA,*
    955 F.3d 56 (D.C. Cir. 2020) ................................................................ 11, 13

*Smith v. Clinton,*
    253 F. Supp. 3d 222 (D.D.C. 2017) ............................................................. 8

*Smiths Indus. Med. Sys., Inc. v. Ballard Med. Prods., Inc.*,
  728 F. Supp. 6 (D.D.C. 1989) ................................................................ 29, 31

*Soundboard Ass'n v. FTC*,
  888 F.3d 1261 (D.C. Cir. 2018) ................................................................ 13

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988).................................................................................... 29

*Stewart v. Nat'l Educ. Ass'n*,
  471 F.3d 169 (D.C. Cir. 2006) ................................................................... 3

*SW Gen., Inc. v. NLRB*,
  796 F.3d 67 (D.C. Cir. 2015) ................................................................... 27

*Tenorio-Serrano v. Driscoll*,
  324 F. Supp. 3d 1053 (D. Ariz. 2018).................................................... 19

*Thomas v. Principi*,
  394 F.3d 970 (D.C. Cir. 2005) .................................................................. 7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).................................................................................... 8

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025)................................................................................... 32

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016)................................................................................... 11

*United States v. Concentrated Phosphate Export Assn.*,
  393 U.S. 199 (1968).................................................................................. 13

*United States v. Eaton*,
  169 U.S. 331 (1898).................................................................................. 28

*\*United States v. Lucas*,
  499 F.3d 769 (8th Cir. 2007)............................................... 15, 16, 18, 19

*United States v. Malagerio*,
  49 F.4th 911 (5th Cir. 2022)..................................................................... 18

*United States v. Peters*,
  2018 WL 6313534 (E.D. Ky. Dec. 3, 2018) ........................................... 29

*United States v. Salerno,*
    481 U.S. 739 (1987).................................................................................... 15

*Valencia Cardenas v. Chestnut,*
    No. 1:26-CV-02073, 2026 WL 785871 (E.D. Cal. Mar. 20, 2026).......................... 21

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008).................................................................................... 15

*Wyman v. James,*
    400 U.S. 309 (1971).................................................................................... 16

**U.S. Code**

5 U.S.C. § 553.............................................................................................. 23

5 U.S.C. § 704.............................................................................................. 11

5 U.S.C § 706................................................................................................. 8

5 U.S.C. § 3345............................................................................................ 26

5 U.S.C. § 3348.................................................................................... 9, 26, 27

8 U.S.C. § 1101............................................................................................ 23

8 U.S.C. § 1225....................................................................................... 16, 22

8 U.S.C. § 1226............................................................................... 16, 20, 22, 24

8 U.S.C. § 1231.................................................................................... 16, 22, 23

8 U.S.C. § 1357.................................................................................... 16, 22, 23

28 U.S.C. § 1404.......................................................................................... 29

Immigration and Nationality Act of 1952,
    Pub. L. No. 82–414, § 242(a), 66 Stat. 163 (1952)........................................... 20

**Rules**

Federal Rule of Civil Procedure 12 ................................................................... 25

**Regulations**

8 C.F.R. § 241.2.................................................................................... 20, 23, 24

**Other Authorities**

15 Wright & Miller's Fed. Prac. & Proc. Juris. § 3854 (4th ed. April 2026 update)..................... 31

*Markwayne Mullin's Senate Confirmation Hearing to Become Homeland Security Secretary*,
   Face the Nation (Mar. 18, 2026), https://www.youtube.com/watch?v=zUtGVXuRRBI,.......... 6

Sample Warrant of Removal,
   https://www.ice.gov/sites/default/files/documents/Document/2017/I-205_SAMPLE.PDF....... 3

**INTRODUCTION**

Plaintiffs are Minnesota residents who challenge the use of a specific internal guidance memorandum authored by former Acting Director of ICE Todd Lyons and circulated on May 12, 2025. Compl., Ex. 1, at 18-20, ECF No. 1-1 ("Lyons Guidance"). That guidance provides U.S. Immigration and Customs Enforcement ("ICE") officers may choose to make an arrest at a person's home based on a type of administrative warrant called a Form I-205 if the person is an alien with a final order of removal. Plaintiffs characterize this practice as a "warrantless" arrest that does not comply with the Fourth Amendment. That characterization, however, is wrong and based on a misapprehension of a "warrantless" arrest. Administrative warrants have a long history in the context of immigration, and the Supreme Court recognized over sixty years ago that there is "impressive historical evidence of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation." *Abel v. United States*, 362 U.S. 217, 234 (1960). The Court should adhere to that history notwithstanding Plaintiffs' apparent disagreement with that long tradition.

But the Court need not reach that issue because there are threshold issues requiring the dismissal of this action. Plaintiffs—Minnesota residents whose homes were allegedly entered during Operation Metro Surge, which ended in February 2026—do not have Article III standing to seek forward-looking relief because the surge in operations in Minnesota ended, and the Supreme Court has made clear that past conduct does not create a presumption of imminent repetition. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). And the challenged memorandum is also unreviewable under the Administrative Procedure Act ("APA") because it is not a final agency action, as no one's rights have been determined. Additionally, this case is moot

because the practice has been paused and will not continue absent further guidance from the Secretary. Any of these grounds requires dismissal for lack of jurisdiction.

On the merits, Plaintiffs' claims fare no better. Their argument that the Lyons Guidance violates the Fourth Amendment is belied by the long-recognized history that the Executive Branch has broad authority in the realm of immigration and can use administrative warrants for immigration purposes. And Plaintiffs' procedural challenges—that Defendants did not have statutory authority to implement the Lyons Guidance, that the Lyons Guidance required notice-and-comment rulemaking, and that the Lyons Guidance was arbitrary and capricious—also fail. Defendants have the statutory authority to use administrative warrants to arrest and detain aliens pending removal; there was no requirement for notice-and-comment rulemaking because the Lyons Guidance covers purely internal operations; and the decision to implement the Lyons Guidance easily satisfies the deferential arbitrary-and-capricious standard. Plaintiffs' final claim— that Lyons was impermissibly appointed under the Federal Vacancies Reform Act ("FVRA"), the APA, and the Appointments Clause—is baseless because Lyons was appointed by the President.

Finally, in the event that the Court does not dismiss the case, the Court should transfer it to the District of Minnesota because all operative events occurred there, and no prejudice would occur to the Plaintiffs by having their home forum hear this case.

## BACKGROUND

### I.      The Lyons Guidance

Plaintiffs challenge a specific memorandum authored by the former Acting Director of ICE: the Lyons Guidance. The Lyons Guidance provides that "ICE immigration officers *may* arrest and detain aliens subject to a final order of removal issued by an immigration judge, the Board of Immigration Appeals (BIA), or a U.S. district court or magistrate judge in their place of residence"

and that "ICE immigration officers should consider all available enforcement mechanisms, including the use of a Form I-205 to arrest an alien in their place of residence." ECF No. 1-1 at 18-19.[1] The Lyons Guidance makes clear that before Form I-205 is used for that purpose, "officers and agents must ensure the Form I-205 is properly completed and is supported by a final order of removal issued by an immigration judge, the BIA, a U.S. district court, or a magistrate judge" and emphasizes that "[t]his is essential because that order establishes probable cause." *Id.* at 19.[2] In addition, officers and agents were directed not to enter a residence without consent pursuant to a Form I-205 warrant without first consulting their chain of command and ICE's Office of the Principal Legal Advisor ("OPLA"). Ex. 1, Decl. of Liana J. Castano ("Castano Decl.") ¶ 9. Arresting officers "must also have reason to believe that the subject alien resides at and is currently located in the address where the Form I-205 is to be served." ECF No. 1-1 at 19. Form I-205s are not to be used to "effectuate an arrest in a third-party residence." *See id.* Form I-205s are also limited to arresting the subject alien and cannot be used as a search warrant, except to "a limited search of the immediate area to ensure officer safety only." *Id.* at 19-20. The Lyons Guidance also provides that immigration officers must "knock and announce" their presence, they "should use only a necessary and reasonable amount of force to enter a residence," and entry should occur only

---

[1] The Lyons Guidance is attached to the Complaint, *see* ECF No. 1-1 at 18-20, and is also incorporated by reference, *see, e.g.*, Compl. ¶¶ 4, 43-51, ECF No. 1, so the Court may consider it when deciding a Rule 12(b)(6) motion. *See Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.").

[2] A Form I-205 must contain information including (1) the full name of the alien, (2) the place and date of entry, and (3) whether the final order of removal was authorized by an immigration judge, a designated official, the BIA, or a federal court. *See* Sample Warrant of Removal, available at https://www.ice.gov/sites/default/files/documents/Document/2017/I-205_SAMPLE.PDF (last visited on June 22, 2026). As Form I-205s are incorporated by reference into the Complaint, *see, e.g.*, Compl. ¶¶ 43, 50, the Court may consider them. *See Stewart*, 471 F.3d at 173.

between the hours of 6:00 a.m. and 10:00 p.m. *Id.* at 19-20. And although applicable nationwide, the Lyons Guidance was fully implemented only in Minnesota, Louisiana, and Texas to give DHS an opportunity to evaluate the utility and impact before using it in other Areas of Responsibility. Castano Decl. ¶ 9; *see also id.* ¶¶ 10-20 (discussing operations in those states). The Lyons Guidance also makes clear that it "serve[s] as general guidance for consideration prior to and when effectuating an arrest in an alien's place of residence using a Form I-205 in combination with a final order of removal" and that it "does not, is not intended to, and may not be construed to create or modify any right or benefit, substantive or procedural, enforceable at law by any party against the United States, its agencies, its officers, or any person." *Id.* at 20.

## II.    This Litigation

Plaintiffs are six individuals who reside in Minnesota who allege that U.S. Department of Homeland Security ("DHS") agents entered their homes with "an administrative form" instead of a judicial warrant when carrying out arrests. Compl. ¶¶ 9-11. According to the Complaint, on December 1, 2025, Plaintiff Abdulkadir Sharif Abdi—an alien—was at his home in Minneapolis, Minnesota when immigration officers came to his home to arrest him. *Id.* ¶¶ 64-66. When he recognized they were immigration agents, Abdi tried to close the door to keep them out. *Id.* ¶ 67. The agents then arrested him allegedly without providing a warrant and without a judicial warrant to enter Abdi's home. *Id.* ¶ 69. Afterward, Abdi and his wife—Plaintiff Rhoda Christenson—were upset, and they allegedly "fear that federal agents will again enter their home without a judicial warrant or permission and arrest [Abdi]" because "[t]he Defendants' policy of warrantless home entries is still in effect" and "[f]ederal agents are still being trained to enter homes without a judicial warrant." *Id.* ¶ 77.

4

On January 11, 2026, Plaintiff Garrison Gibson Brown—an alien—was similarly arrested in his North Minneapolis home while his wife, Plaintiff Teyana Gibson Brown, was present. *Id.* ¶¶ 78-83. Immigration officers allegedly stated that they had a warrant to enter the house, but Ms. Gibson Brown attempted to shut the door on the officers to prevent their entry. *Id.* ¶¶ 88-89. The officers allegedly did not have a warrant signed by a judge but only one "signed [] by an ICE officer." *Id.* ¶¶ 93-95. Mr. Gibson Brown then challenged his arrest in federal court in Minnesota, and a federal court released him. *Id.* ¶ 96. He allegedly was "rearrested" the next day but was released. *Id.* ¶¶ 97-98. The Gibson Browns allegedly "live in daily fear that federal agents will again break into their home without permission or a judicial warrant." *Id.* ¶ 105.

Immigration officers also allegedly entered Plaintiffs Jeyli and Alfredo Salguero's home in "nearby Minneapolis" with an administrative warrant to arrest Jose Dimas Cardoza, Jeyli's half-brother, who allegedly did not live there. *Id.* ¶¶ 106-12, 120. The administrative warrant was allegedly signed by an ICE Field Office Director for St. Paul, Minnesota. *Id.* ¶ 122. Mr. Salguero, who allegedly holds temporary protected status, was arrested, and federal agents have allegedly "re-entered and searched the Salgueros' property." *See id.* ¶¶ 124-29. In February 2026, according to them, "two agents opened the Salgueros' mailbox," *see id.* ¶ 128, and "multiple federal agents entered onto the Salgueros' property" outside the front door. *See id.* ¶ 129. The Salgueros allegedly "continue to live in substantial fear" that there will be more entries "without a judicial warrant." *Id.* ¶ 136.

Plaintiffs filed their complaint on April 2, 2026. *See* ECF No. 1. Plaintiffs allege six causes of action. *First*, they allege a violation of the APA because the Lyons Guidance, in their view, violates the Fourth Amendment of the U.S. Constitution. Compl. ¶¶ 159-66. *Second*, they argue that the Lyons Guidance violates the APA because it is in excess of Defendants' statutory authority.

5

*Id.* ¶¶ 167-72. *Third*, Plaintiffs allege that the Lyons Guidance required notice-and-comment rulemaking. *Id.* ¶¶ 173-79. *Fourth*, they argue that implementation of the Lyons Guidance is arbitrary and capricious because "the agency relied on factors Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, and offered a justification that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* ¶¶ 180-86. *Fifth*, they seek a declaration that the Lyons Guidance violates the Fourth Amendment. *Id.* ¶¶ 187-91. *Sixth*, Plaintiffs challenge the appointment of now retired-Acting Director Lyons under the Federal Vacancies Reform Act ("FVRA"), APA, and the Appointments Clause. *Id.* ¶¶ 192-203.

## III.    The Secretary Pauses the Implementation of the Lyons Guidance

On March 5, 2026, the President nominated Markwayne Mullin to serve as Secretary of Homeland Security, and during his March 18 Senate confirmation hearing, he testified that if confirmed as head of the agency, "[ICE officers] will not enter a home without a judicial warrant unless [they] are pursuing the individual that runs into a house." *See Markwayne Mullin's Senate Confirmation Hearing to Become Homeland Security Secretary*, Face the Nation (Mar. 18, 2026), https://www.youtube.com/watch?v=zUtGVXuRRBI, at 1:13:23-1:13:34. After taking office, by letter dated May 8, 2026, Secretary Mullin publicly confirmed that he "paused the practice of entering an illegal alien's residence who is subject to a final order of removal with an I-205, Warrant of Removal/Deportation, while [he] assess[es] the policy." ECF No. 11-1; Castano Decl. ¶ 21. That pause remains in effect, and relevant ICE staff have been made aware of this decision. *Id.* ¶ 22. In the meantime, ICE's Enforcement and Removal Operations ("ERO")—the subcomponent of ICE that identifies, arrests, and removes aliens who present a danger to national

security or are a risk to public safety, as well as those who enter the United States illegally, *id.* ¶ 5—will not execute Form I-205 warrants inside residences without consent during this pause and will follow appropriate guidance moving forward. *Id.* ¶ 23.

### LEGAL STANDARD

To survive a Rule 12(b)(1) motion, the party asserting subject-matter jurisdiction bears "the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In considering such assertions, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). But the court "need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept a plaintiff's legal conclusions." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than "a sheer possibility that a defendant has acted unlawfully" and "unadorned . . . accusation[s]." *Id.* at 678; *see also Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026) (same). Instead, a complaint must plead facts sufficient to "nudge the plaintiff's claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached

7

as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Smith v. Clinton*, 253 F. Supp. 3d 222, 234 (D.D.C. 2017) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

## ARGUMENT

### I.    This Court Does Not Have Jurisdiction

#### A.    Plaintiffs Do Not Have Article III Standing Based on Past Allegedly Unlawful Government Conduct.

Federal courts are courts of limited jurisdiction and possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III standing is required for a federal court to have jurisdiction, and it cannot be asserted "in gross," as Plaintiffs must have standing for "each claim that they press against each defendant," *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted), and "for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Further, Plaintiffs bear the burden of proving standing at each stage of the litigation, and standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). For a plaintiff to have standing to pursue "forward-looking" relief such as an injunction, a plaintiff must show that she "face[s] 'a real and immediate threat of repeated injury.'" *Murthy*, 603 U.S. at 58 (citation omitted).

Plaintiffs seek only forward-looking relief by requesting only declaratory and injunctive relief from the Court. *See* Compl. at 40-41 (Prayer for Relief).[3] Plaintiffs do not have standing

---

[3] Specifically, Plaintiffs ask the Court to (1) "[d]eclare unlawful, vacate, and set aside the [Lyons Guidance] as contrary to law, in excess of statutory authority, arbitrary and capricious, and improperly promulgated without observance of the APA's notice and comment requirements"; (2) "[e]xercise the Court's authority under 5 U.S.C § 706 to issue all necessary and appropriate relief barring Defendants from enforcing or otherwise giving effect to the [Lyons Guidance]"; (3) "[d]eclare that the [Lyons Guidance] violates the Fourth Amendment"; and (4) "[v]acate the

8

under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), to pursue that relief. The *Lyons* Court explained that a plaintiff who had previously been placed in a chokehold by a police officer could not seek an injunction to end the alleged chokehold policy even though he believed the same conduct could happen in the future. *Id.* at 105. That was so because he could not demonstrate that he had "a real and immediate threat" of being placed in a chokehold in the future because there was no evidence that all police officers choked citizens at every encounter or that the governmental entity always acted in such a manner. *Id.* at 105-06. As the Court explained, the plaintiff "is no more entitled to an injunction than any other citizen of Los Angeles" because "a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Id.* at 111.

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), likewise instructs that a plaintiff lacks standing when it cannot articulate specific facts demonstrating that harm is imminent. There, the Supreme Court held that plaintiffs—who alleged their communications with foreign contacts were being targeted and intercepted by the government pursuant to a statute—lacked standing because they "merely speculate[d] and ma[d]e assumptions about whether their communications with their foreign contacts w[ould] be acquired" without setting forth "specific facts" demonstrating such targeting. 568 U.S. at 411-12. Even if the plaintiffs could show that "the targeting of their foreign contacts [wa]s imminent," it remained speculative that the government would use the specific statute rather than some other means to conduct surveillance. *Id.* at 413. And even if the plaintiffs could demonstrate that the government would seek authorization from the Foreign Intelligence Surveillance Court to target their communications, it was speculative that the "court w[ould]

---

[Lyons Guidance Memo] pursuant to 5 U.S.C. § 3348(d) and the Appointments Clause." Compl. at 40-41 (Prayer for Relief).

9

authorize such surveillance," meaning that there would be "guesswork as to how independent decisionmakers will exercise their judgment." *Id.* at 413.

Here, Plaintiffs cannot demonstrate that they have a substantial risk of any future injury entitling them to a broad injunction restricting immigration officers from operating under an internal guidance memorandum. Plaintiffs' standing theory is like that asserted in *Lyons*, which itself was insufficient to demonstrate Article III standing. "[L]ike in *Lyons*, plaintiffs seek a forward-looking injunction to enjoin law enforcement" while "hav[ing] no good basis to believe that law enforcement will" violate their constitutional rights "in the future." *See Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 2 (2025) (mem.) (Kavanaugh, J., concurring). "Absent a sufficient likelihood that [they] will again be wronged in a similar way," plaintiffs are "no more entitled to an injunction than any other citizen . . . ; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Lyons*, 461 U.S. at 111; *see also Hussen v. Noem*, 822 F. Supp. 3d 944, 1000 (D. Minn. 2026) (finding that plaintiffs could not seek forward-facing injunctive relief because they had "no good basis to believe that law enforcement will unlawfully stop [or arrest] *them* in the future based on the prohibited factors—and certainly no good basis for believing that any stop [or arrest] of the plaintiffs is imminent" (alterations and emphasis in original) (quoting *Vasquez Perdomo*, 146 S. Ct. at 3 (Kavanaugh, J., concurring))). Without a concrete, imminent risk that the individual Plaintiffs will once again be arrested pursuant to an administrative warrant in their places of residence, their injunctive claim fails for lack of standing. *Chaplaincy of Full Gospel Churches v. Navy*, 697 F.3d 1171, 1175 (D.C. Cir. 2012) ("Where, as here, plaintiffs seek forward-looking injunctive relief, past injuries alone are insufficient to establish standing. Instead, Plaintiffs must show that they face an imminent threat of future injury." (citation modified)). Plaintiffs'

10

proffered speculation of future harm is insufficient to demonstrate any realistic immediate threat that they will be subjected to an arrest pursuant to a Form I-205 in their places of residence. *See Clapper*, 568 U.S. at 401.

### B.    Plaintiffs Do Not Challenge Any Final Agency Action

Plaintiffs do not identify any final agency action, which is a prerequisite to judicial review under the APA. *See* 5 U.S.C. § 704. Agency action is final—and therefore reviewable in a judicial action brought pursuant to the APA—only when it "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Whether there are any direct and appreciable legal consequences is a "pragmatic inquiry" that examines "the concrete consequences an agency action has or does not have as a result of the specific statutes and regulations that govern it." *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 637 (D.C. Cir. 2019). As the D.C. Circuit explained in *Sierra Club v. EPA*, 955 F.3d 56 (D.C. Cir. 2020), there is no final agency action where the challenged act "imposes no obligations, prohibitions or restrictions on regulated entities" and "does not subject them to new penalties or enforcement risks." *Id.* at 63. "[I]f the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for the purpose of judicial review." *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005).

Here, the now-paused Lyons Guidance—even when it was in effect—is nothing more than a guidance document; it does not *require* any officer or agent to use a Form I-205 to enter an alien's place of residence and merely "informs the use of Forms I-205 and provides to ICE law enforcement personnel a reminder of the general limitations and exceptions that may apply when effectuating arrests in an alien's residence." ECF No. 1-1 at 19. The Lyons Guidance states that

11

"ICE immigration officers *may* arrest and detain aliens subject to a final order of removal [] in their place of residence" using a Form I-205 under certain circumstances, but it does not require its use in such manner. *Id.* at 18 (emphasis added). Instead, "ICE immigration officers should consider all available enforcement mechanisms, including the use of a Form I-205 to arrest an alien in their place of residence." *Id.* at 18-19. That language indicates that no legal consequences flow from the Lyons Guidance. ICE officers may use Form I-205s—coupled with a verification that there is a final order of removal and that "the subject alien resides at and is currently located in the address where the Form I-205 is to be served," *id.* at 19—to make arrests of aliens subject to a final order of removal. But officers can also pursue any other enforcement mechanism available to them. Moreover, the Lyons Guidance makes clear that it is a "general guidance for consideration" by officers making arrests that does not create any substantive rights or benefits. *Id.* at 20.

The Lyons Guidance is thus like other agency guidance that courts have held did not constitute final agency action. *See, e.g.*, *Mass. Coal. for Immigr. Reform v. DHS*, 621 F. Supp. 3d 84, 96 (D.D.C. 2022) (revision of DHS manual's general instructions was not final agency action because those instructions "do not bind DHS or any of its components to a particular decision" and "components remain free" to conduct their decisionmaking in the same way they did previously); *ForUsAll, Inc. v. Dep't of Lab.*, 691 F. Supp. 3d 14, 28-29 (D.D.C. 2023) (guidance that cautioned fiduciaries regarding purchasing cryptocurrencies was not a final agency action because it did not "withdraw discretion from the Department going forward"). For example, in *Sierra Club*, the D.C. Circuit held that a guidance document pertaining to air quality could not be challenged because permitting authorities retained a significant amount of discretion—including the freedom to ignore it entirely—after its publication and it neither imposed binding duties,

12

obligations, prohibitions, or restrictions, nor compelled action by either the recipient or the agency. 955 F.3d at 64. Likewise, in *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1268 (D.C. Cir. 2018), the court held that a letter sent by FTC staff was not final agency action when the letter bound neither the Commission's staff nor any state permitting authorities. And in *National Mining Association v. McCarthy*, 758 F.3d 243 (D.C. Cir. 2014), the agency guidance was not final agency action because it "impos[ed] no obligations or prohibitions on regulated entities" and permitting authorities were "free to ignore it." *Id.* at 252. Finally, in *Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218 (D.C. Cir. 2026), the D.C. Circuit held that an executed memorandum between DHS and the Internal Revenue Service was not a final agency action because it "merely clarifie[d] IRS's existing duties under a statute." *Id.* at 1236 (citation modified). Likewise, the Lyons Guidance here does not bind ICE officials or require any decision by anyone within ICE and thus cannot be considered final agency action. Accordingly, Plaintiffs' APA challenge to that guidance fails for lack of final agency action.

### C.    The Case Is Moot Because Defendants Are No Longer Implementing the Lyons Guidance.

This case is also moot because the practice of entering residences with Form I-205 warrants is not in effect. A case is moot when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203 (1968)). In the D.C. Circuit, courts find that a case is moot and not subject to the voluntary cessation exception unless "there is some evidence that the party sought to manipulate the court's jurisdiction" and "sought to strategically avoid judicial review by ceasing a challenged activity." *Samma v. Dep't of Def.*, 136 F.4th 1108, 1114 (D.C. Cir. 2025). Even if it is "at least possible that [an agency] might at some point seek to implement a similar

13

policy," courts cannot issue advisory opinions when the agency "does not represent that it intends to revert to the policy at issue" because they "[can]not speculate on the form and content of some uncertain future policy." *Id.*; *see also*, *e.g.*, *Alaska v. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021) ("The established law of this circuit is that the voluntary-cessation exception to mootness has no play when the agency did not act in order to avoid litigation.").

Here, that test is met because the Lyons Guidance is no longer in use, and it will not be used absent further guidance from the Secretary. Immigration officers will thus not execute Form I-205 warrants inside residences without consent without such guidance. *See* Castano Decl. ¶¶ 21, 23.

## II.     Plaintiffs Fail to State a Claim

If the Court decides that it has jurisdiction, it should dismiss Plaintiffs' claim on the merits. *First*, the practice authorized by the Lyons Guidance complies with the Fourth Amendment because the Supreme Court has long recognized that administrative warrants are permissible under the Fourth Amendment in the context of immigration. *Second*, Plaintiffs' procedural challenges— that Defendants lacked the statutory authority to issue the Lyons Guidance, that the Lyons Guidance required notice-and-comment rulemaking, and that the Lyons Guidance was arbitrary and capricious—each fails on the merits because Defendants have the statutory authority to use administrative warrants to arrest and detain aliens pending removal, because there was no requirement for notice-and-comment rulemaking as the Lyons Guidance covers purely internal operations, and because the decision to implement the Lyons Guidance easily satisfies the deferential arbitrary-and-capricious standard. *Third*, Plaintiffs' claim that Lyons was

14

impermissibly appointed by former Secretary Noem is incorrect because Lyons was appointed by the President.

### A.    The Lyons Guidance Does Not Violate the Fourth Amendment.

Two of Plaintiffs' claims depend on the notion that the Lyons Guidance violates the Fourth Amendment (Counts 1 & 5). Plaintiffs face a high bar because they bring a facial challenge, arguing that the Lyons Guidance violates the Fourth Amendment in every instance in which it is invoked. Although such challenges may be brought, *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015), "[s]uch a challenge is 'the most difficult . . . to mount successfully.'" *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). That is so because when "[b]ringing a facial challenge, it is not enough for the plaintiffs to demonstrate that [the challenged policy] mandate will often cause Fourth Amendment violations"; instead, "[t]hey must establish that the mandate 'is unconstitutional in all of its applications.'" *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).

Plaintiffs cannot meet that burden because administrative warrants have long been recognized as permissible under the Fourth Amendment in the context of immigration as well as others. The touchstone of the Fourth Amendment is that any searches and seizures must be "reasonable." *See, e.g.*, *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987); *United States v. Lucas*, 499 F.3d 769, 777 (8th Cir. 2007) (en banc) (plurality). Although a judicial warrant is ordinarily required, "special needs, beyond the normal need for law enforcement [can] make the warrant and probable-cause requirement impracticable." *Griffin*, 483 U.S. at 874 (citation omitted). Determining reasonableness involves balancing the need to arrest against the invasion caused by the arrest. *Cf. Camara v. Municipal Court*, 387 U.S. 523, 536-37 (1967). For example, in *Griffin*, the Supreme Court held that a state law complied with the Fourth Amendment when it authorized

probation officers to make warrantless searches when the officer believed the probationer's home contained contraband, finding that the probation system could "justify departures from the usual warrant and probable-cause requirements as long as their searches meet 'reasonable legislative or administrative standards.'" *Griffin*, 483 U.S. at 873-74 (quoting *Camara*, 387 U.S. at 538); *see also Wyman v. James*, 400 U.S. 309, 326 (1971) (concluding that home visits to ensure compliance with welfare rules was permissible without a judicial warrant). And in *Lucas*, the Eighth Circuit justified such a departure because "[w]hatever expectation of privacy an escaped convict might have must be weighed against the strong interest the government has in bringing him back into custody." *Lucas*, 499 F.3d at 777.

Congress authorized Form I-205 warrants through a statute that, like the probation search statute in *Griffin*, advanced a reasonable legislative interest in enforcing immigration laws. As discussed *infra*, courts have recognized that Congress has provided broad authority to immigration enforcement agencies to address the problem of illegal aliens. The INA grants immigration officers the authority to arrest aliens and detain them prior to removal. *See, e.g.*, 8 U.S.C. §§ 1225, 1226, 1231, 1357. Specifically, the INA provides that "[o]n a warrant issued by the [Secretary], an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," 8 U.S.C. § 1226(a); that "when an alien is ordered removed, the [Secretary] shall remove the alien from the United States within a period of 90 days," *id.* § 1231(a)(1)(A); and that "[d]uring the removal period, the [Secretary] shall detain the alien." *See id.* § 1231(a)(2)(A). These statutes reflect Congress' long-held judgment that aliens subject to a final order of removal have a diminished expectation of privacy in their homes because they have already been ordered to leave the country, and any expectation an alien has must be weighed against the strong interest the government has in enforcing its federal immigration laws. *Cf. Lucas*, 499 F.3d at 777.

16

Additionally, long ago, the Supreme Court described the use of administrative warrants as a "long-sanctioned practice of government" and stated that "[s]tatutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time." *Abel v. United States*, 362 U.S. 217, 230 (1960). In *Abel*, Federal Bureau of Investigation officers without a warrant pushed open the door and entered the hotel room of an alleged spy, "his then abode," while he was undressed. *Id.* at 221. The spy would not cooperate with those officers, so they signaled for two Immigration and Naturalization Service ("INS") officers—the precursor to ICE— who were waiting in the hotel room next door. *Id.* at 223. That second group of officers served a warrant signed by "the District Director of the I.N.S." upon the spy. *Id.* at 222-23.

In the district court, the spy moved to suppress items seized during his arrest. *Id.* at 218. He lost that motion, and then was tried, convicted, and sentenced to thirty years' imprisonment. *Id.* In the Supreme Court, the spy argued that this administrative warrant "was invalid, because it did not satisfy the requirements for 'warrants under the Fourth Amendment.'" *Id.* at 230. Although the Court chose not to answer that question—because the argument was "expressly disavowed" in the proceedings below, *id.*—in what has been recognized as "forceful dicta,"[4] the Supreme Court explained that its reading of history confirmed that administrative warrants are lawful under the Fourth Amendment. The Court examined the current iteration of the INA, noting that it "g[ave] authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment." *Id.* at 232. And implementing regulations allowed "District Directors of the I.N.S." to "issue these administrative warrants" in "their discretion." *Id.* (citation modified). Thus, "[t]he

---

[4] *Flores ex rel. Galvez-Maldonado v. Meese*, 913 F.2d 1315, 1337 (9th Cir. 1990) *rev'd en banc*, 942 F.2d 1352 (9th Cir. 1991), *rev'd on other grounds sub nom. Reno v. Flores*, 507 U.S. 292 (1993).

arrest procedure followed in the [spy's] case fully complied with the statute and regulations." *Id.* at 232-33.

The Court went further, however, observing that "[t]he constitutional validity of this long-standing administrative arrest procedure in deportation cases has never been directly challenged in reported litigation," nor has anyone challenged "the constitutional validity of administrative deportation warrants," despite the Court having "upheld administrative deportation proceedings." *Id.* at 233-34. The Court also stated that its precedent supported that such administrative arrests were lawful. *Id.* at 234 (citing *Carlson v. Landon*, 342 U.S. 524 (1952)). The Court thus concluded it need not consider the issue further "[i]n the presence of this impressive historical evidence of acceptance of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation." *Id.*

Circuit courts have long understood that *Abel*'s reasoning means that administrative warrants are lawful under the Fourth Amendment. The Fifth Circuit recently observed that "[i]t [was] undisputed that *federal* immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability." *City of El Cenizo*, 890 F.3d at 187 (citing *Abel*, 362 U.S. at 233–34); *see also United States v. Malagerio*, 49 F.4th 911, 915 (5th Cir. 2022) ("In the immigration context, administrative warrants can be issued without probable cause that a crime has been committed and without the involvement of 'a neutral and detached magistrate.'" (footnote omitted) (quoting *Lucas*, 499 F.3d at 776)). And relying on *Abel*, the Eighth Circuit held that an administrative warrant used to investigate an apartment for an escaped convicted felon based on a corroborated tip and arrest was permissible under the Fourth Amendment when "the administrative official responsible for the custody of prisoners issued a warrant to retake an inmate who had already been convicted of a crime beyond a reasonable doubt and had fled from his lawful

18

custody." *Lucas*, 499 F.3d at 776. The *Lucas* court reasoned that the felon's Fourth Amendment rights were not violated because his "reasonable expectation of privacy was limited by his status as an escapee and the officers possessed both a valid administrative warrant and reasonable cause to believe" he was in the location. *Id.* at 779.[5] Similarly, the Tenth Circuit stated that the fact that aliens "may be arrested [by] administrative warrant issued without an order of a magistrate" was but one area where aliens did not have the same constitutional rights afforded to citizens. *See Lopez v. INS*, 758 F.2d 1390, 1393 (10th Cir. 1985) (citing *Abel*, 362 U.S. 217). Likewise, the Ninth Circuit cited *Abel* and stated that "deportation statutes going back to 1798 'have ordinarily authorized the arrest of deportable aliens by order of an executive official,' evidencing an 'overwhelming historical legislative recognition of the propriety of administrative arrest for deportable aliens.'" *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 878 (9th Cir. 2007) (quoting *Abel*, 362 U.S. at 233).

District courts have similarly applied *Abel*'s reasoning to conclude that immigration law enforcement may use administrative warrants for deportation purposes. *See, e.g.*, *Lopez-Lopez v. Cnty. of Allegan*, 321 F. Supp. 3d 794, 799 (W.D. Mich. 2018) ("Specifically in the immigration context, federal law enforcement officers have a long history of using administrative warrants and arrests for purposes of deportation, dating back to 1798." (citing *Abel*, 362 U.S. at 233)); *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1066 (D. Ariz. 2018) (holding that a judicial warrant is not required for ICE to arrest individuals suspected of being removable).

Likewise, the Supreme Court has never overruled or criticized *Abel*'s reasoning, and even though the Court did not cite *Abel* in *Griffin*, that decision supports that administrative warrants

---

[5] Notably, Plaintiffs all reside in Minnesota, which is located in the Eighth Circuit where *Lucas* was decided. *See* Compl. ¶¶ 11, 16-17, 19-20, 21-22.

can be used to make searches without a judicial warrant when a regulatory "regime would [] be unduly disrupted by a requirement of probable cause," as here. *See* 483 U.S. at 878. The Court also rejected that a "neutral judge" was necessary to conduct an administrative search, as that could be completed by a "neutral magistrate" or "neutral officer." *Id.* at 877 n.5.

Further, the text of the governing statutes and regulations remain virtually the same as those in effect at the time of *Abel*. The current version of the INA states that an alien may be arrested and detained "[o]n a warrant issued by the [Secretary]." 8 U.S.C. § 1226(a).[6] The historical version of the statute in effect when *Abel* was decided stated: "Pending a determination of deportability in the case of any alien . . . , such alien may, upon warrant of the Attorney General, be arrested and taken into custody." *See* Immigration and Nationality Act of 1952, Pub. L. No. 82–414, § 242(a), 66 Stat. 163, 208–09 (1952); *see also Abel*, 362 U.S. at 232 ("The present form of the legislation giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment, is [§] 242(a) of the Immigration and Nationality Act of 1952."). And the current governing regulation states that several types of supervisory officers may issue "[a] Form I-205, Warrant of Removal, based on the final administrative removal order in the alien's case." 8 C.F.R. § 241.2(a)(1). And when *Abel* was decided, the historical version of the governing regulation allowed "District Directors of the I.N.S." to issue administrative warrants. *See Abel*, 362 U.S. at 232 (citing and quoting 8 C.F.R. § 241.2(a) (1952)). And the fact that the statute and implementing regulations use the word "warrant" does not mean that the requirements for a *judicial* warrant must be met. *See Sherman*, 502 F.3d at 882-83 (holding that a statute that required a "warrant" to be

---

[6] Congress has empowered the Secretary to enforce the Immigration and Nationality Act. *See* 8 U.S.C. § 1101 *et seq.*; *Nielsen v. Preap*, 586 U.S. 392, 398 (2019).

issued by a parole commission did not mean that Congress adopted the requirements for the Warrant Clause under the Fourth Amendment). To be sure, there is a non-binding recent district court opinion holding that under the Fourth Amendment, "an administrative warrant is insufficient to enter the constitutionally protected areas of a home." *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 979-80 (C.D. Cal. 2024). And a few other courts have followed *Kidd*'s reasoning. *See, e.g.*, *Valencia Cardenas v. Chestnut*, No. 1:26-CV-02073, 2026 WL 785871, at *1 n.1 (E.D. Cal. Mar. 20, 2026). But this Court should not follow *Kidd*. The court in *Kidd* did not address *Abel*'s reasoning, stating only that "the Supreme Court has expressly declined to consider whether an administrative warrant satisfied the requirements for 'warrants' under the Fourth Amendment." *Kidd*, 734 F. Supp. 3d at 979 (citing *Abel*, 362 U.S. at 230). That was, in part, due to a stipulation wherein the parties agreed to not argue that an administrative warrant can allow entry into a residence, but the Court also stated that "even if the Court were to consider administrative warrants, Defendants' arguments would still fall short." *Id.* at 978-79. In dicta, the *Kidd* court then stated that an administrative warrant was insufficient because it "lack[ed] the independent assurance guaranteed by the Fourth Amendment," *id.* at 979, but it did not examine *Abel* or any other cases involving administrative warrants in its reasoning. This Court should thus ignore *Kidd* and should instead follow the clear command of *Abel* and the decades of precedent supporting *its* reasoning since it was issued.

Plaintiffs also note that they were located in their homes and allege that to enter a home, a judicial warrant is required. *See, e.g.*, Compl. ¶ 1 ("It has long been clear that to enter a home without consent, a judicial warrant is required."), ¶ 31 ("The Fourth Amendment requires a warrant issued by a neutral and detached judicial officer for government agents to forcibly enter a home."). But the Supreme Court has sanctioned administrative searches conducted in homes, *Griffin*, 483

21

U.S. at 873 (finding an administrative "search of [petitioner's] home satisfied the demands of the Fourth Amendment," despite the fact that there was no warrant), and the Court stated that administrative arrests were a "a long-sanctioned practice of government," even though the spy was arrested in a hotel room that functioned as the person's "abode." *See Abel*, 362 U.S. at 221. Plaintiffs thus posit a distinction without a difference in the context here; the relevant question of whether an administrative warrant may be issued for the arrest of an individual who is subject to a final order of removal has been decisively answered in the affirmative by the case law.[7]

**B.     The Lyons Guidance Is Otherwise Lawful Under the APA.**

Plaintiffs also allege several claims that the Lyons Guidance violated the APA for procedural reasons, alleging that (1) the Lyons Guidance exceeds Defendants' statutory authority (Count 2); (2) the Lyons Guidance required notice-and-comment rulemaking (Count 3); and (3) the Lyons Guidance was arbitrary and capricious (Count 4). None has merit.

***Statutory Authority.*** Defendants have statutory authority to arrest and detain aliens prior to their removal from the United States. Courts have recognized that Congress has provided "[b]road authority" to immigration enforcement agencies "to address the problem of illegal aliens." *Lopez*, 758 F.2d at 1392. The INA grants immigration officers the authority to arrest aliens and detain them prior to removal. *See, e.g.*, 8 U.S.C. §§ 1225, 1226, 1231, 1357. Specifically, the INA provides that "[o]n a warrant issued by the [Secretary], an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," 8 U.S.C. § 1226(a); that "when an alien is ordered removed, the [Secretary] shall remove the alien from the

---

[7] In any event, Form I-205 administrative warrants generally are only issued after a final order of removal is entered, which would include circumstances in which a neutral and detached magistrate has found that a final order of removal is warranted upon completion of proceedings. *See* ECF No. 1-1 at 18-19. (all persons who may be arrested and detained under the Lyons Guidance have to be "subject to a final order of removal issued by an immigration judge, the [BIA], or a U.S. district court judge or magistrate judge").

United States within a period of 90 days," *id.* § 1231(a)(1)(A); and that "[d]uring the removal period, the [Secretary] shall detain the alien." *See id.* § 1231(a)(2)(A). Indeed, the INA allows an immigration officer to make a warrantless arrest "if he has reason to believe that the alien so arrested is in the United States in violation of any . . . law or regulation and is likely to escape before a warrant can be obtained for his arrest," so long as the alien is taken "without unnecessary delay for examination before an officer . . . having authority to examine aliens as to their right to enter or remain in the United States." *See* 8 U.S.C. § 1357(a)(2). And the regulations, adopted a decade ago, authorize more than thirty types of supervisory officers to issue "[a] Form I-205, Warrant of Removal, based on the final administrative removal order in the alien's case." 8 C.F.R. § 241.2(a)(1). Nothing in the INA's or implementing regulation's language limits arrests to those where an officer obtains a judicial warrant or consent to enter the home.

But Plaintiffs' real claim is a repeat of their Fourth Amendment one, as they allege that Defendants cannot "enter homes forcibly to enforce civil immigration law without having first obtained a judicial warrant or consent" and that the Lyons Guidance is thus not within the "powers assigned to Defendants by Congress." Compl. ¶¶ 168-69. For the same reasons stated above, Plaintiffs are incorrect about the scope of the Fourth Amendment.

***Notice-and-Comment Rulemaking.*** The Lyons Guidance was not subject to notice-and-comment rulemaking. The APA specifically exempts "interpretative rules, general statements of policy, [and] rules of agency organization, procedure, or practice" from the notice-and-comment requirement. *See* 5 U.S.C. § 553(b)(A), (d)(2). "[T]his exception was provided to ensure that agencies retain latitude in organizing their internal operations" and "covers agency actions that do not themselves alter the rights or interests of parties." *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980). The D.C. Circuit has "used the term 'procedural exception' as shorthand for that

23

exemption, and [it has] referred to rules promulgated under it as 'procedural rules.'" *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Nat'l Lab. Rels. Bd.*, 57 F.4th 1023, 1034 (D.C. Cir. 2023). This "limited carveout is intended for 'internal house-keeping measures organizing agency activities,'" *id.* (quoting *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987)), and "[i]ts purpose is 'to ensure that agencies retain latitude in organizing their internal operations.'" *Id.* (quoting *Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014)).

Here, the Lyons Guidance fits comfortably within the procedural exception, as it merely reminds agents to choose among "all available enforcement mechanisms, including the use of a Form I-205" when making "arrest[s] [of] alien[s] in their place of residence . . . in accordance with applicable law and policies." ECF No. 1-1 at 18-19. Those enforcement mechanisms are grounded in the statutes and regulations that already provide that immigration officers may arrest and detain aliens "[o]n a warrant issued by the [Secretary]," 8 U.S.C. § 1226(a), and that supervisory officers may issue "[a] Form I-205, Warrant of Removal, based on the final administrative removal order in the alien's case." 8 C.F.R. § 241.2(a)(1). And all ICE special agents and deportation officers are authorized to execute Form I-205. *Id.* § 287.5(e)(3)(iii)-(v). Thus, the notice-and-comment rulemaking process was not required.

***Arbitrary and capricious review.*** The Lyons Guidance is not subject to arbitrary-and-capricious review because, as stated above, it does not constitute final agency action. Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). All that is required is for the agency to "act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423.

24

Here, the Lyons Guidance easily satisfies this highly deferential review. Former Acting Director Lyons decided that ICE officers may use administrative warrants to arrest aliens subject to final orders of removal in their place of residence because the Constitution, INA, and immigration regulations allow for such enforcement. ECF No. 1-1 at 18. Although Plaintiffs conclusorily allege that "the agency relied on factors Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, and offered a justification that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," Compl. ¶ 182, Plaintiffs do not substantiate that allegation by reference to any factor Defendants allegedly failed to consider when implementing their internal guidance. Plaintiffs instead invite the Court to "substitute its own policy judgment for that of the agency," which is impermissible. *See Prometheus*, 592 U.S. at 423.

**C.    Plaintiffs Fail to State a Claim Under the FVRA, the APA, or Appointments Clause Relating to Lyons's Appointment as Acting ICE Director.**

Plaintiffs allege that Defendants violated the FVRA, the APA, and Appointments Clause relating to Lyons's appointment as Acting ICE Director. *See* Compl. ¶¶ 192-203 (Count 6). That claim should be dismissed because a Memorandum from the President, attached hereto as Exhibit A to Exhibit 2, confirms that the President appointed Lyons.[8]

***The FVRA.*** Under the FVRA, an acting officer may be appointed for a statutorily set period of time in three ways. *First*, a "first assistant to the office of such officer" may serve in an acting capacity. 5 U.S.C. § 3345(a)(1). *Second*, the President "may direct a person who serves in an office

---

[8] For purposes of this argument, the Court should treat the motion relating to Plaintiffs' claims about Lyons's appointment under the standard set out in Federal Rule of Civil Procedure 12(d), which states that for "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity." *Id.* § 3345(a)(2). *Third*, the President "may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity." *Id.* § 3345(a)(3).

Though not entirely clear, Plaintiffs appear to allege that Lyons's appointment was unlawful because he was not the first assistant and allegedly was appointed by former Secretary Noem, not the President. Compl. ¶¶ 197-98. But Plaintiffs are incorrect: the President appointed Lyons, as confirmed by the attached Memorandum dated March 19, 2025, which is signed by the President and appoints Todd Lyons "to perform the duties of the office of Director of U.S. Immigration and Customs Enforcement." Ex. 2-A (March 19, 2025 Memorandum from the President); *see also* Ex. 2, Decl. of Valarie A. Sheppard ¶ 3. Thus, Lyons was properly appointed under the provision allowing the President to "direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(3).

And Plaintiffs fail to state a claim under the FVRA for additional reasons. *First*, the issuance of the Lyons Guidance is not an "action" as defined by the FVRA. The FVRA provides that, in general, "[a]n action taken by any person who is not" properly serving in an acting capacity under the statute "in the performance of any function or duty of a vacant office," which is narrowly defined for purposes of § 3348, "shall have no force or effect." *Id.* § 3348(d)(1). The FVRA defines "action" by incorporating the definition of the APA. *See id.* § 3348(a)(1). Thus, the definition of "action" for FVRA purposes is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13). Here, the Lyons Guidance

26

is none of those; it is not "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." *Id.* The Lyons Guidance instead is simply a guidance document that is not being currently implemented, *see* Castano Decl. ¶¶ 21-23, and that does not constitute reviewable final agency action. *See supra* Part I.B.

*Second*, Plaintiffs' claim also fails because § 3348 narrowly defines "function or duty" solely for purposes of that section as "any function or duty" of the office that is "established" by statute or regulation and "required" by statute or "such regulation" "to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2). That is, § 3348 of the FVRA "void[s]" a limited class of actions taken by an invalidly serving official that are, by statute or regulation, *exclusive* to the vacant office." *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 78 (D.C. Cir. 2015), *aff'd*, 580 U.S. 288 (2017). Issuing the Lyons Guidance was not an action "in the performance of any function or duty" of the office of ICE Director because there is no statute or regulation providing that the guidance document could be accomplished *only* by the ICE Director. Rather, the relevant authority could be exercised by other officials, including the Secretary.

**The APA.** Similarly, Plaintiffs' claim that the alleged violation of the FVRA also violates the APA, *see* Compl. ¶ 202, must be dismissed because it duplicates the FVRA claim. The Complaint alleges that the Lyons Guidance "must also be vacated under the APA because Mr. Lyons unlawfully exercised the authority of the ICE Director when he issued the Memo, in violation of the FVRA and the DHS Orders of Succession & Delegation." *Id.* There are no facts alleged as to what the undefined "DHS Orders of Succession & Delegation" are anywhere in the Complaint, *see generally id.*, and as discussed, there is no violation of the FVRA. So the APA claim too fails.

27

***The Appointments Clause.*** Plaintiffs also fail to state a claim for a violation of the Appointments Clause. *See* U.S. Const. art. II, § 2, cl. 2. Plaintiffs allege that the issuance of the Lyons Guidance violated the Appointments Clause because "Mr. Lyons has not been confirmed by the Senate to the Office of ICE Director, and no statute authorized him to exercise the powers of that office in an acting capacity." Compl. ¶ 203.

But Plaintiffs are incorrect because acting officials may temporarily hold an office without any violation of the Appointments Clause. The Supreme Court has long held that there is no Appointments Clause violation for officials who temporarily perform the duties of a superior; "an official who is 'charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions,' need not be appointed by the President with the advice and consent of the Senate." *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 153 (D.D.C.) (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)), *aff'd on other grounds,* 920 F.3d 1 (D.C. Cir. 2019). As explained by the district court in *Guedes*, there is an "unbroken legislative practice" by which "Congress has continuously authorized the President to direct persons who are not first assistants and who lack any constitutionally relevant Senate confirmation to perform the duties of a principal office temporarily on an acting basis." *Id.* at 149.

Indeed, "[s]ince President Washington's first term, Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant [] office [requiring Presidential appointment and Senate confirmation] without first obtaining Senate approval." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 294 (2017). "The current FVRA is merely the 21st century iteration of a practice that Congress has sanctioned—and the federal courts have upheld—in the 18th, 19th, and 20th [century]." *United States v. Peters*, No. 6:17-CR-55-REW-

HAI-2, 2018 WL 6313534, at *4 (E.D. Ky. Dec. 3, 2018) (citation omitted). That historical practice is given "significant weight" when interpreting the Appointments Clause. *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 524 (2014). Thus, Plaintiffs' Appointments Clause claim should be dismissed.

**III.    In the Alternative to Dismissal, the Court Should Transfer this Case to the District of Minnesota Because All Relevant Events Occurred There and All Plaintiffs Reside There.**

If the Court does not dismiss the case, it should transfer the venue to the District of Minnesota under 28 U.S.C. § 1404(a). That provision states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Any decision to transfer "is left largely to the district court's discretion, and of necessity depends on the facts of each case." *Smiths Indus. Med. Sys., Inc. v. Ballard Med. Prods., Inc.*, 728 F. Supp. 6, 7 (D.D.C. 1989) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22 (1988)).[9]

To start, all operative facts occurred in Minnesota. Plaintiffs all reside in Minnesota, and all relevant events took place in Minnesota. Plaintiffs are six Minnesota residents who live in or near Minneapolis who allege that immigration officers entered their homes in Minnesota without a judicial warrant. *See* Compl. ¶¶ 64-66 (Abdi and Christensen's home is located in Minneapolis), ¶¶ 78-83 (the Gibson Browns' home is in North Minneapolis), ¶ 112 (the Salgueros' home is

---

[9] Courts consider several "private interest" and "public interest" factors when deciding whether "the convenience of parties and witnesses" and "the interest of justice" favor transfer. The "private interest" factors are: "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and (6) the ease of access to sources of proof." *Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012). The "public interest" factors are: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of each court; and (3) the local interest in deciding local controversies at home." *Id.* at 378-79.

29

"nearby Minneapolis"). And the Lyons Guidance was fully implemented only in Minnesota, Texas, and Louisiana, not the District of Columbia. Castano Decl. ¶ 9.

Courts regularly order transfers to districts where the locus of operative facts occurred. *See, e.g.*, *Greene v. Nat'l Head Start Ass'n, Inc.*, 610 F. Supp. 2d 72, 75 (D.D.C. 2009) (stating "[w]hen the events occur in more than one district, a court can consider which jurisdiction has the stronger factual nexus to the claims" and transferring the case); *Fed. Ins. Co. v. Shaw Indus., Inc.*, No. 1:23-CV-1367-RDP, 2024 WL 2884558, at *9 (N.D. Ala. June 7, 2024) (transferring a case in part "[b]ecause almost all of the events forming the basis of this lawsuit . . . all occurred" in a separate district). That is true even when the defendant is a federal agency located in the District of Columbia. *See, e.g.*, *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 138 (D.D.C. 2012) ("[V]enue is not proper in the District of Columbia where a substantial part, if not all, of the employment practices challenged in this action took place outside the District even when actions taken in the District 'may have had an impact on the plaintiff's situation." (citation modified)).

Another district judge's decision in this District is particularly instructive. In *Marks v. Torres*, Judge Sullivan stated that a plaintiff could not "establish venue in this district either on the ground that he challenges an ICE policy or that a high-level ICE official based in Washington, D.C. is a named defendant" because the case involved "interpretation and implementation of [ICE] regulations [that] occurred outside of" the District of Columbia. 576 F. Supp. 2d 107, 111 (D.D.C. 2008). Thus, "venue [was] not proper in the District of Columbia." *Id.* Likewise, here, Plaintiffs' challenge involves decision-making made by immigration law enforcement officers in the District of Minnesota, as all allegedly unlawful arrests occurred there. *See* Compl. ¶¶ 64-66, 78-83, 112. Thus, the case should be transferred to that District.

Additionally, according to Plaintiffs' Complaint, there is at least one other proceeding in the U.S. District Court for the District of Minnesota relating to the same events as Mr. Gibson Brown challenged his arrest under the Fourth Amendment in a case initiated in Minnesota. *See* Compl. ¶ 96 (citing Amended Order, *Garrison G. v. Bondi*, No. 26-CV-172 (D. Minn. Jan. 17, 2026), ECF No. 10). Courts frequently "transfer to a forum in which other actions arising from the same transaction or event . . . were pending." *See* 15 Wright & Miller's Fed. Prac. & Proc. Juris. § 3854 (4th ed. April 2026 update) (collecting cases). Maintaining the case here could risk conflicting decisions on issues of law involving the same facts, warranting transfer to the District of Minnesota. *Cf. Fed. Hous. Fin. Agency v. First Tenn. Bank Nat. Ass'n*, 856 F. Supp. 2d 186, 195 (D.D.C. 2012) (transferring a case because not doing so would allow a possible conflict between rulings of judges in different districts); *Smiths Indus.*, 728 F. Supp. at 7 (transferring a case *sua sponte* when there was an ongoing related case in another district).

Transferring the case will not prejudice Plaintiffs. A plaintiff's choice of forum is given "weakened" deference "when a plaintiff is not a resident of the forum and most of the relevant events occurred elsewhere." *Greene*, 610 F. Supp. 2d at 75 (citation omitted); *see also Marks*, 576 F. Supp. 2d at 111. And the issues presented are ones of federal law, so the knowledge of applicable law is irrelevant to the transfer analysis because both courts are federal courts. *See Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006).

## IV.    The Court Can Grant Relief to the Plaintiffs Only.

Plaintiffs' case should be dismissed entirely, and if it is not, it should be transferred. But in the event that the Court disagrees, the Court cannot grant Plaintiffs the relief requested in their complaint for persons not before the Court. Compl. at 40 (Prayer for Relief A & B). That is so because the Supreme Court's *CASA* decision limits any relief only to the named Plaintiffs as the Court cannot award "relief to nonparties." *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025). Instead,

31

the Court can only "administer complete relief *between the parties*," meaning the key question "is whether an injunction will offer complete relief *to the plaintiffs before the Court*." *Id.* (emphasis in original) (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)). Plaintiffs' requested relief is not so limited, as they seek to prevent the use of Form I-205s entirely. *See* Compl. at 40 (Prayer for Relief A & B). This Court cannot do that as doing so would "improperly intrude[] on a coordinate branch of Government" by "prevent[ing] the Government from enforcing its policies against nonparties." *CASA*, 606 U.S. at 859 (citation modified). So if the Court does issue some sort of relief to Plaintiffs, it should be limited to Plaintiffs alone.

## CONCLUSION

The Court should dismiss this action in its entirety. In the alternative, the Court should transfer the case to the District of Minnesota.

Dated: June 23, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Branch Director
Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Assistant Director, Federal Programs Branch

/s/ *J. Stephen Tagert*
J. STEPHEN TAGERT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel.: (202) 305-5486
stephen.tagert@usdoj.gov
*Counsel for Defendants*

32