# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TEYANA GIBSON BROWN, *et al.*,

*Plaintiffs*,

*v.*

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security, *et al.*,

*Defendants*.

No. 1:26-cv-01131-TSC

**DECLARATION OF LIANA J. CASTANO**

I, Liana J. Castano, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am Assistant Director for Field Operations at Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS). In this role I provide guidance and coordination to ERO's 24 national field offices and headquarters, managing programs and initiatives to identify, arrest, prosecute and remove priority aliens. I have more than two decades of service within the DHS and have served in numerous leadership positions within ICE ERO, including Interim Assistant Director for Removals, Assistant Director for Law Enforcement Systems and Analysis, Field Office Director for the Washington Field Office, and acting Deputy Assistant Director for Field Operations. I hold a Bachelor of Science in Criminal Justice and a Master of Public Administration from Florida International University. I am a member of the Senior Executive Service.

2. This declaration is submitted in support of Defendants' Motion to Dismiss this matter.

3. I provide this declaration based on my personal knowledge, reasonable inquiry, and information obtained from various records and other DHS and ICE employees in the regular course of business.

**Background**

4. ICE is the largest investigative branch of DHS and is charged with enforcement of more than 400 federal statutes. DHS was created after the September 11, 2001 terrorist attacks by combining components of the former Immigration and Naturalization Service and the former U.S. Customs Service, among other agencies, to more effectively enforce federal immigration and customs laws and to protect the United States against terrorist attacks. The mission of ICE is to protect the United States from the cross-border crime and illegal immigration that threaten national security and public safety. To carry out that mission, ICE focuses on enforcing immigration laws, preventing terrorism, and combating transnational criminal threats. ICE consists of three core operational directorates: (1) ERO, which includes 24 field offices led by Field Office Directors; (2) Homeland Security Investigations (HSI), which includes 30 field offices led by Special Agents-in-Charge; and (3) the Office of the Principal Legal Advisor (OPLA).

5. ERO deportation officers are immigration officers under Title 8 of the U.S. Code and have been delegated limited customs officer authority under 19 U.S.C. § 1589a. It is the mission of ERO to identify, arrest, and remove aliens who present a danger to national security or are a risk to public safety, as well as those who enter the United States illegally—including those who cross the border illegally, which is a federal misdemeanor in the first instance and a felony on repeat offenses (8 U.S.C. § 1325), and those who illegally reenter after having been removed, which is a felony (8 U.S.C. § 1326)—or

otherwise undermine the integrity of our immigration laws and our border control efforts.

6. The majority of ERO's immigration enforcement operations take place in the interior of the country. ERO manages all logistical aspects of the removal process by identifying, apprehending, and, when appropriate, detaining removable aliens during the course of immigration proceedings and pending physical removal from the United States. This includes locating and taking into custody fugitive aliens and at-large criminal aliens, as well as identifying aliens in federal, state, and local prisons and jails and working with those authorities to transfer them to ICE custody without releasing them into the community. When aliens are ordered removed, ERO is responsible for safely repatriating them or otherwise overseeing their departure from the United States.

**The Use of Administrative Warrants in Residences**

7. On March 12, 2025, the then-Acting Director of ICE, Todd Lyons, issued the memorandum "Utilizing Form I-205, Warrant of Removal" ("Memorandum"), providing operational guidance on the use of administrative warrants to arrest certain aliens with final orders of removal. The Memorandum stated that, pursuant to a Form I-205, Warrant of Removal/Deportation ("Form I-205 warrant"), DHS immigration officers may arrest and detain aliens within their places of residence in certain, limited circumstances.

8. The Memorandum was clear about the circumstances under which ICE officers could use a Form I-205 warrant at a place of residence. The Memorandum provided that ICE officers must knock and announce their presence and should only use necessary and reasonable force to enter the residences of specific classes of aliens where the alien has both a final order of removal and a Form I-205. The Memorandum also limited the hours

during which ICE officers may seek entry under this process to between 6:00 a.m. and 10:00 p.m.

9. It was determined that, although this Memorandum is applicable nationwide, it would be fully implemented only in Minnesota, Louisiana, and Texas to give DHS an opportunity to evaluate the utility and impact prior to using it in other Areas of Responsibility (AOR's). In addition, officers and agents were directed not to enter a residence without consent pursuant to a Form I-205 warrant without first consulting their chain of command and OPLA.

**Use of the Memorandum in Minnesota**

10. In July 2025, ERO St. Paul, which covers the Twin Cities, was advised of the use of Form I-205 in its AOR to arrest aliens subject to a final order of removal prior to using it in other AORs. Only selected officers with advanced training, including the Special Response Teams and Fugitive Operations Teams, were selected for this operation.

11. All officers tasked with this operation were provided specialized training, which included the limited number of circumstances in which the Memorandum applies.

12. During this operation, which took place over the course of just a few days, Form I-205 warrants were executed within residences in approximately three enforcement actions.

13. On December 1, 2025, DHS components ICE and U.S. Customs and Border Protection began Operation Metro Surge (OMS). Specially designated teams from ERO and HSI were assigned to the operation. Over time, more officers from local ERO and agents from local HSI were assigned to the operation, as well as ERO and ICE personnel from offices across the country.

14. To execute a Form I-205 warrant in a residence, officers and agents were required to seek supervisory review and consultation with OPLA.

15. Prior to the end of OMS, ICE officers and agents in Minneapolis ceased executing administrative arrests in residences after they were verbally advised that leadership would no longer be providing approved Form I-205 warrants for use in residences.

**Use of Memorandum in Louisiana**

16. On July 14, 2025, a specially designated team from ERO conducted a single targeted enforcement operation with the use of an I-205 warrant in New Orleans, Louisiana. During that operation, ERO officers first knocked on the door to give the occupants an opportunity to answer. They continued to knock several times and verbally request that the occupants open the door which they failed to do. After several minutes, ERO officers obtained supervisory approval to enter the residence without consent.

17. On July 14, 2025, a specially designated team from ERO conducted a single targeted enforcement operation with the use of an I-205 warrant in New Orleans, Louisiana. During that operation, ERO officers first knocked on the door to give the occupants an opportunity to answer. They continued to knock several times and verbally request that the occupants open the door which they failed to do. After several minutes, ERO officers obtained supervisory approval to enter the residence without consent.

**Use of Memorandum in Texas**

18. Within Texas, two AORs authorized operations including the use of Form I-205 warrants in residences: Houston and Dallas.

19. In the Houston AOR, ERO effectuated a single operation on July 9, 2025, against a criminal alien with a final order of removal. Only specially trained officers were used for the operation, at which the alien was located in his home. He was subsequently removed.

20. In the Dallas AOR, ERO officers considered the use of Form I-205; however, it was never used.

**<u>"Pause" on the Memorandum</u>**

21. By letter dated May 8, 2026, Secretary of Homeland Security Markwayne Mullin publicly confirmed to Senator Richard Blumenthal that he had paused the practice of entering residences with Form I-205 warrants while he assesses the policy. That assessment is ongoing.

22. Relevant ICE staff have been made aware of this decision.

23. ERO will not execute Form I-205 warrants inside residences without consent during this pause and will follow appropriate guidance moving forward.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of June 2026.

Digitally signed by LIANA J CASTANO
Date: 2026.06.23 17:44:16 -04'00'

Liana J. Castano
Assistant Director for Field Operations
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security